**Eugene Francis CUYPERS,
petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A05–644.

Supreme Court of Minnesota.

March 23, 2006.

Eugene Francis Cuypers, pro se.

Mike Hatch, Atty. Gen., Mark S. Rubin, Asst. County Atty., for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

In 1990, appellant Eugene Francis Cuypers was found guilty by a St. Louis County jury of first-degree premeditated murder and burglary. He was sentenced to a mandatory term of life imprisonment for the murder conviction and a concurrent term of 108 months for the burglary. On appeal from the judgment, we affirmed. *State v. Cuypers*, 481 N.W.2d 553 (Minn. 1992). Thereafter, on February 2, 2005, and proceeding pro se, Cuypers brought a petition for postconviction relief. The postconviction court denied the petition without an evidentiary hearing. We affirm.

On Sunday, November 26, 1989, Cuypers, then age 20, and two friends drove to a nearby residence in rural St. Louis County to obtain some guns. They understood the homeowners were gone for the weekend but unexpectedly encountered Larry Sullivan who had been asked to watch over the property. While his two friends stayed with Sullivan, Cuypers entered the home and took two guns. Cuypers and his friends then drove Sullivan about 5 miles down Fox Farm Road and into the woods, yelling at him to scare him. About 3 weeks before this, Cuypers learned that Sullivan had sexually molest-

ed Cuypers' girlfriend 5 years earlier when she was 11 or 12 years old. After stopping the car, Cuypers and one of his friends walked Sullivan into the woods; Cuypers continued screaming at Sullivan about what he had done to Cuypers' girlfriend; and when Sullivan turned to walk away, Cuypers pulled up his rifle and fired, striking Sullivan in the back of the head and killing him. Cuypers later confessed to the shooting, providing a more complete account after visiting with his priest. He said that he was only trying to get Sullivan's admission to the abuse of his girlfriend; but when Sullivan turned to walk away, he got "madder and madder" and fired his gun.[1]

Cuypers was indicted on charges of first-degree premeditated murder; first-degree felony murder; kidnapping; and first-degree burglary. The jury found him guilty as charged. In affirming on appeal, we held that the admission of letters seized by jailers pursuant to valid jail regulations did not violate Cuypers' state and federal constitutional rights against unreasonable searches and seizures and that there was no error in the denial of a heat-of-passion manslaughter jury instruction. *Cuypers*, 481 N.W.2d at 557.

Cuypers brought this petition for postconviction relief in February 2005, seeking a new trial on grounds of judicial bias, vindictive prosecution, ineffective assistance of counsel, and newly discovered evidence; challenging the validity of the indictment; and, in the alternative, requesting a reduction of the murder conviction to manslaughter and sentencing relief. Following a review of the record, including the trial transcripts, trial court minute sheets, pleadings, documents on file and this court's decision on appeal from the judgment, the postconviction court denied the petition, concluding that Cuypers had not alleged any facts requiring an evidentiary hearing and that his claims failed on the merits.

## I.

A person convicted of a crime may seek postconviction relief "to vacate and set aside the judgment * * * or grant a new trial or correct the sentence or make other disposition as may be appropriate." Minn.Stat. § 590.01, subd. 1 (2004) (amended 2005). As a general rule, once a direct appeal has been taken, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). A petition for postconviction relief may be denied in the absence of an evidentiary hearing if the petition, files, and record "conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2004); *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn.1990) (stating that an evidentiary "hearing is not required unless facts are alleged which, if proved, would entitle a petitioner to the requested relief.").

On review of postconviction decisions, we have an " 'obligation to extend a broad review of both questions of law and fact * * *.' " *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003) (quoting *State ex rel. Pittman v. Tahash*, 284 Minn. 365, 368, 170 N.W.2d 445, 447 (1969)). We review legal issues de novo. *Butala*, 664 N.W.2d at 338. Our review of factual matters, however, is limited to "whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.*

1. A more complete recitation of the facts can be found in *State v. Cuypers*, 481 N.W.2d 553 (Minn.1992).

## II.

■ *Judicial Bias, Vindictive Prosecution, Ineffective Assistance of Counsel and Newly Discovered Evidence.* Cuypers argues that he is entitled to a new trial based on judicial bias, as evidenced by a review of the trial proceedings. Criminal defendants have a constitutional right to be tried before a fair and impartial judge. *Bracy v. Gramley,* 520 U.S. 899, 904–05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). Our independent review of the record satisfies us that Cuypers had a fair trial in a fair tribunal before an impartial judge. The record reflects that the trial court carefully considered the various motions and objections made by both sides, ruling in Cuypers' favor on numerous occasions and taking the initiative to place limitations on certain evidence to avert any potential for undue prejudice.

■ Cuypers argues that he was subject to vindictive prosecution. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)). Typically, a presumption of vindictiveness arises when a defendant's exercise of a procedural right causes a "complete retrial after he had been once tried and convicted." *Goodwin,* 457 U.S. at 376, 102 S.Ct. 2485. In the area of pretrial prosecutorial decisions, however, there is generally no presumption of vindictiveness. *Id.* at 384, 102 S.Ct. 2485. As the postconviction court concluded, the allegations of vindictive prosecution in this case lack merit.

■ Cuypers asserts ineffective assistance of trial counsel resulting from conflicts of interest. A Sixth Amendment violation can be demonstrated by showing that an actual conflict of interest adversely affected counsel's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). "But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim." *Id.* at 350, 100 S.Ct. 1708. Cuypers alleges conflicts with trial counsel over trial strategy, but disagreements over trial strategy generally will not establish the requisite predicate for the claim. *State v. Brocks,* 587 N.W.2d 37, 43 (Minn. 1998) (citing *State v. Berry,* 309 N.W.2d 777, 785 (Minn.1981)). Cuypers alleges conflicts with appellate counsel in seeking certiorari review in the United States Supreme Court; but the constitutional right to court-appointed counsel for indigent defendants on their appeal of right does not extend to discretionary appeals in the state's highest court or in petitioning for review in the Supreme Court. *Halbert v. Michigan,* —— U.S. ——, 125 S.Ct. 2582, 2587, 162 L.Ed.2d 552 (2005) (citing *Ross v. Moffitt,* 417 U.S. 600, 610–12, 615–18, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)). Cuypers was not denied effective assistance of counsel at trial or on appeal.

■ Cuypers requests a new trial based upon newly discovered evidence. To gain a new trial based on newly discovered evidence, the petitioner must establish (1) that the newly discovered evidence was not within petitioner's or his counsel's knowledge before trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that it is not cumulative, impeaching, or doubtful evidence; and (4) that the evidence would probably produce a different or more favorable result. *Wieland v. State,* 457 N.W.2d 712, 714 (Minn.1990) (citing *Berry v. State,* 364 N.W.2d 795, 796 (Minn.1985)). As the postconviction court noted, Cuypers

provided no substantive basis for this claim.

**Invalid Indictment.** Cuypers challenges the validity of the indictment, asserting the indictment lacked specificity and was multiplicitous. An indictment "must fairly apprise the defendant of the charge brought against him, * * * [so] that he might properly prepare his defense, and so that he is protected from subsequent prosecution for the same offense." *State v. Mullen,* 577 N.W.2d 505, 510 n. 6 (Minn.1998) (quoting *State v. Wurdemann,* 265 Minn. 92, 94, 120 N.W.2d 317, 318 (1963) (alterations in original)). When conduct constitutes more than one offense, "each such offense may be charged in the same indictment or complaint in a separate count." Minn. R.Crim. P. 17.03, subd. 1. The indictment in this case conformed to the specificity requirements and properly charged each offense.

**Diminished Capacity.** Cuypers argues he was denied the right to present a diminished capacity defense for purposes of reducing the first-degree murder offense to manslaughter. The trial court granted defense counsel's motion for competency and mental illness evaluations.[2] The results of the medical evaluations, done on December 8, 1989 and on March 20, 1990, were that Cuypers was competent to proceed to trial and that at the time of the commission of the offenses for which he had been indicted, he was not laboring under such a defect of reason caused by mental illness as not to know the nature of the acts constituting the offenses or that said acts were wrong.[3] Given the medical evaluations, the postconviction court concluded that Cuypers had no grounds upon which to interpose a diminished capacity defense.

**Diminished capacity** permits the fact finder to consider a sane defendant's mental abnormality when determining the degree of criminal liability and is separate and distinct from the defense of insanity. Peter Arenella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage,* 77 Colum. L.Rev. 827, 828 (1977). It is considered a partial defense because it does not completely exonerate the defendant but merely reduces the degree or nature of the crime. *Id.;* 2 Wayne R. LaFave, *Substantive Criminal Law* § 9.2(a) (2d ed.2003). Minnesota has not approved the diminished capacity doctrine. *State v. Schreiber,* 558 N.W.2d 474, 480 (Minn.1997).

**Sentencing Relief.** Cuypers seeks relief under the rule of *Blakely v. Washington,* requiring that " 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum be submitted to a jury, and proved beyond a reasonable doubt.' " 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The "presumptive sentence prescribed by the Minnesota Sentencing Guidelines is 'the maximum sentence a judge may impose solely on the basis of

**2.** To ensure that a defendant is competent to understand and participate in criminal proceedings, the rules require a medical evaluation when competency is in doubt. Minn. R.Crim. P. 20.01, subd. 2. The rules also require that a defendant who chooses to put his sanity in issue submit to an evaluation by a court-appointed medical examiner. Minn. R.Crim. P. 20.02, subd. 2.

**3.** Minnesota Statutes § 611.026 (2004) provides that a defendant is not guilty by reason of mental illness if, at the time of the criminal act, the defendant did not know the nature of the act or did not know that it was wrong because of a defect of reason caused by a mental illness or deficiency.

facts reflected in the jury verdict or admitted by the defendant.'" *State v. Shattuck*, 704 N.W.2d 131, 141 (Minn.2005) (quoting *Blakely*, 542 U.S. at 303, 124 S.Ct. 2531). But *Blakely* has no application here because Cuypers was sentenced to the mandatory life term for the murder and a concurrent presumptive term for the burglary.

In summary, the postconviction court's denial of relief without an evidentiary hearing was not improper where the record clearly and conclusively supported the denial.

Affirmed.

GILDEA, J., not having been a member of this court at the time of the submission, took no part in the consideration or decision of this matter.