*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0388**

Daniel Morris Johnson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed March 2, 2015
Affirmed
Worke, Judge**

Chippewa County District Court
File No. 12-CR-10-703

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer L. Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David Gilbertson, Chippewa County Attorney, Montevideo, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**WORKE**, Judge

Appellant challenges his sentence, arguing that he should have received a greater downward departure because similarly-situated offenders received shorter sentences, but that he did not because the sentencing judge was biased. We affirm.

**FACTS**

On November 12, 2010, appellant Daniel Morris Johnson was charged with five counts of first-degree criminal sexual conduct for multiple incidents of alleged sexual conduct with his girlfriend's 15-year-old daughter in violation of Minn. Stat. § 609.342, subd. 1(g) (2008) (stating that a person who engages in sexual penetration with another person who is under 16 and with whom the actor has a significant relationship is guilty of first-degree criminal sexual conduct).

Johnson pleaded guilty to one count of first-degree criminal sexual conduct in exchange for dismissal of the remaining counts, a 120-month sentencing cap, and the agreement that Johnson could argue for a lower sentence. The 120-month sentence represented a downward departure from the presumptive 144-month Minnesota Sentencing Guidelines sentence. The prosecutor moved for the downward departure primarily to eliminate the need for the victim to testify. At sentencing, Johnson asserted that he should be granted a 28-month sentence because he cooperated with the investigation, accepted responsibility for the offense, had a support team, and pleaded guilty only to one of the five counts. The district court sentenced Johnson to 120 months plus ten years of conditional release.

Johnson then moved for postconviction relief, requesting that his sentence be reduced to 48 months based on his argument that: (1) the sentencing judge had previously prosecuted him on an unrelated offense which presented a conflict of interest; (2) defendants in similar cases received sentences closer to what he requested; and (3) the bailiff told the judge, "your buddy Dan Johnson's next" when Johnson's case was called for sentencing. The sentencing judge recused himself and a different judge presided over postconviction proceedings. The postconviction court denied relief under Minn. R. Crim. P. 27.03, finding that Johnson's sentence was lawful and did not unfairly exaggerate the criminality of his conduct. *See* Minn. R. Crim. P. 27.03, subd. 9 (stating that a "court may at any time correct a sentence not authorized by law"). This appeal followed.

## D E C I S I O N

### Removal of sentencing judge

Johnson first argues that the postconviction court failed to consider whether the sentencing judge should have disqualified himself under the Minnesota Code of Judicial Conduct. *See* Minn. Code Jud. Conduct Rule 2.11(A) ("A judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned."). We review the denial of postconviction relief for an abuse of discretion.[1]

---

[1] We consider Johnson's resentencing request as a petition for postconviction relief and not as a Rule 27.03 motion to correct a sentence unauthorized by law. Johnson's motion was titled: "Petition for Post-Conviction Relief." While he requested relief pursuant to rule 27.03 and was denied relief under the same, Johnson does not claim that his sentence was unauthorized by law. Further, a district court may treat a rule 27.03 motion as a postconviction-relief motion. *Powers v. State*, 731 N.W.2d 499, 500-01 & n.2 (Minn. 2007) (noting that district court properly considered defendant's rule 27.03 motion to correct his sentence as his third postconviction petition).

3

*Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). Whether a judge has violated the Code of Judicial Conduct is a question of law reviewed de novo. *State v. Dorsey*, 701 N.W.2d 238, 246 (Minn. 2005). When reviewing a judge's decision not to disqualify himself, we objectively examine whether the judge's impartiality reasonably could be questioned. *Id.* at 248. But once a defendant submits to a proceeding before a judge without objecting on the basis of bias, "we will reverse the defendant's conviction only if the defendant can show actual bias in the proceedings." *State v. Plantin*, 682 N.W.2d 653, 663 (Minn. App. 2004), *review denied* (Minn. Sept. 29, 2004).

While Johnson claims that he asked his attorney to remove the sentencing judge, he does not provide any evidence for this assertion; he made no record objecting to the judge, and he admitted that the identity of the sentencing judge did not affect his decision to plead guilty. Because Johnson objected to the sentencing judge only after sentencing, he was required to show actual bias.

A criminal defendant's right to a fair trial includes the right to an impartial judge. *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006). "There is the presumption that a judge has discharged his . . . judicial duties properly." *State v. Mems*, 708 N.W.2d 526, 533 (Minn. 2006). Judicial canons are interpreted broadly and "it is presumed that judges will set aside collateral knowledge and approach cases with a neutral and objective disposition." *Dorsey*, 701 N.W.2d at 248-49 (quotation omitted). While disqualification under the rule uses the term "shall" and therefore is "not purely aspirational," it leaves

4

"considerable room for interpretation in [its] application to any given set of circumstances." *Powell v. Anderson*, 660 N.W.2d 107, 115 (Minn. 2003). The rule for disqualification "does not provide a precise formula that can automatically be applied." *Id.* Further, "[t]he mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." *State v. Burrell*, 743 N.W.2d 596, 601-02 (Minn. 2008).

In *State v. Moss*, the defendant asserted that he was entitled to a new trial because the trial judge had prosecuted him for second-degree murder approximately ten years earlier. 269 N.W.2d 732, 734 (Minn. 1978). The supreme court held that although the "defendant had an absolute right to disqualify the trial judge," because he submitted to an omnibus hearing, two trials, and sentencing before raising the issue, they would "not reverse the judgment unless [the] defendant were able to show actual bias and not just the appearance of bias." *Id.* at 734-35.

In *Plantin*, the defendant argued that the district court judge had a conflict of interest because the judge had previously granted the victim in the case an order for protection against the defendant. 682 N.W.2d at 663. Because the defendant did not object until after trial, this court concluded that to reverse his conviction he was required to show actual bias, and the alleged conflict of interest did not demonstrate actual bias. *Id.*

Johnson claims that the sentencing judge was biased in two ways: (1) he had prosecuted him on a previous charge, and (2) immediately prior to sentencing the bailiff told the judge "your buddy Dan Johnson's next." In *Moss*, the judge's previous

5

prosecution of the defendant for second-degree murder did not show actual bias where the prosecution occurred ten years earlier. 269 N.W.2d at 734-35. Although the sentencing judge's the prior prosecution of Johnson was more recent than in *Moss* and the sentencing judge was aware that he had previously prosecuted Johnson, there is no indication that this biased the judge at sentencing, especially when Johnson was granted the downward departure according to the plea agreement. And there is nothing in the record regarding the bailiff's statement other than Johnson's claim. It is difficult for us to assess the validity of the bailiff's statement because the district court did not address the statement and there was no testimony about it other than Johnson's. However, even assuming that the statement was made, there is no indication that it biased the sentencing judge or that the judge even responded to the bailiff's comment. We conclude that Johnson has not demonstrated actual bias. Thus, the postconviction court did not abuse its discretion by denying relief.

***Length of Sentence***

Johnson next argues that the postconviction court should have reduced his sentence to 48 months. This court reviews "a sentencing court's departure from the sentencing guidelines for abuse of discretion." *State v. Geller*, 665 N.W.2d 514, 516 (Minn. 2003). The parties do not dispute the appropriateness of the downward departure. In fact the prosecutor moved for the downward departure. But they disagree as to the length of the departure. Johnson argues that he should have been given a greater departure because: (1) he had been law abiding and had zero criminal-history points prior

6

to this conviction; and (2) others who committed similar offenses had received shorter sentences.

But Johnson has not been law abiding: he has a gross-misdemeanor conviction for fifth-degree criminal sexual conduct for which he was sentenced in 2001, and a 2010 felony conviction for failure to register as a predatory offender, although neither of these offenses accrued criminal-history points. The sentencing guidelines account for criminal-history points in determining presumptive sentences. *See* Minn. Sent. Guidelines cmt. II.2.B.02 (2009) ("The [g]uidelines provide uniform standards for the inclusion and weighting of criminal history information."). Therefore, Johnson's criminal-history score of zero is not a separate mitigating factor.

Johnson claims that under *State v. Miller* "past sentences received by other offenders" are relevant in determining whether to reduce his sentence. 488 N.W.2d 235, 241 (Minn. 1992). But *Miller* states that we only review other offenders' sentences for *consecutive* sentencing purposes. *Id.* Further, nothing in the record supports Johnson's claim about the sentences of others. At sentencing, Johnson noted two offenders with similar cases who received lower sentences, but the source of his information and the case facts are not part of the record. And Johnson does not cite any authority supporting his contention that the other cases he identified should influence his sentence—especially when he agreed to a plea that included a downward departure. Moreover, Johnson admits that his conduct does not appear to be rare or atypical of this offense. *See* Minn. Sent. Guidelines 2.D (2009) (stating "[t]he sentence ranges provided in the [s]entencing [g]uidelines [g]rids are presumed to be appropriate for the crimes to which they apply").

7

"The disappointment of receiving a greater sentence than expected is not grounds for withdrawing a guilty plea." *State v. Andren*, 358 N.W.2d 428, 431 (Minn. App. 1984). While Johnson does not wish to withdraw his plea, we apply the same principle: Johnson agreed to a sentence no greater than 120 months, and while he hoped for a greater downward departure, he has not shown that the district court abused its broad discretion in sentencing.

**Affirmed.**